**Aaron BURKHOLDER (t/d/b/a Burkholder Farm Kennel),**
**Petitioner**

**v.**

**DEPARTMENT OF AGRICULTURE, Dennis C. Wolff, Secretary of Agriculture and Bureau of Dog Law Enforcement, Susan L. West, Director, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2009.

Decided Feb. 8, 2010.

Kevin J. Fitzgerald, Olyphant, for petitioner.

David C. McKenzie, III, Asst. Counsel, Harrisburg, for respondent, Department of Agriculture.

BEFORE:  LEADBETTER, President Judge, PELLEGRINI, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Aaron Burkholder, t/d/b/a Burkholder Farm Kennel (Burkholder) petitions for review of the May 15, 2009 adjudication and final order of the Secretary of the Department of Agriculture that affirmed the decision of the Department's Bureau of Dog Law Enforcement (Bureau) to refuse to approve Burkholder's 2009 kennel license application pursuant to Section 211(a) of the Dog Law (the Law).[1] Also before us for disposition is the Bureau's application for summary relief.[2]

On December 30, 2008, Burkholder sent the Bureau an application for a 2009 commercial kennel class license permitting fifty-one to one hundred dogs of any age during a calendar year. The Bureau received the application and a check for $200 on January 2, 2009. On February 5, 2009, the Bureau sent Burkholder a kennel license refusal order, noting that its personnel had inspected the kennel on nine occasions and found numerous serious violations of the Law and its regulations. Burkholder appealed the refusal order on February 12. The Bureau then sent him a notice of operating under suspension of kennel license and a letter scheduling an administrative hearing for March 24, 2009.

Prior to taking testimony at the hearing, the parties stipulated that Burkholder had entered pleas of guilty in the Court of Common Pleas of Berks County to four violations of Section 207(b) of the Law, 3 P.S. § 459–207(b), failure to maintain the kennel in a sanitary and humane condition in compliance with regulations. Those violations included failure to provide adequate shelters for dogs kept outdoors; failure to keep buildings and grounds of kennels clean and in good repair; failure to maintain indoor and outdoor housing facilities for dogs in a manner to protect them from injury and to contain the dogs; and failure to provide ample lighting by natural or artificial means in indoor housing facilities. 7 Pa.Code §§ 21.24(b), 21.29(c), 21.21(a) and 21.27. Thereafter, the Bureau presented the testimony of the three inspectors who had conducted the nine inspections between May 9 and September 8, 2008. The first inspector, Ms. Donmoyer, testified that she inspected the kennel in response to its inclusion in a feature by Oprah Winfrey dealing with puppy-mills and that she also visited the other Pennsylvania kennels that were featured. In summary, the inspectors testified that their inspections revealed numerous violations of the Law and its regulations.

Burkholder testified that even though he has had a kennel license since 2002, he has been breeding dogs since 1974. In general, he acknowledged that it was his responsibility to be in compliance with the regulations. He stated his belief that there were two things that he had to do following Ms. Donmoyer's initial inspection, but that he could not remember them. He believed that the first thing he did to rectify the unsatisfactory conditions was to repair the wire on the cages. He further testified that he needed help two to three times per week cleaning the kennel, but that he did not always watch the cleaning take place. Finally, he testified that he was unable to correct the water resistance problems and some of the cleaning issues noted in the

1. Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. § 459–211(a).

2. In the application for summary relief, the Bureau requests that we affirm the Secretary's order, the same relief requested in its brief on the merits, filed at approximately the same time as its motion. Because we affirm the Secretary's order after full briefing and oral argument, we dismiss the application as moot.

May 9th inspection before the May 23, 2008 inspection.

On May 15, 2009, the Secretary affirmed the Bureau's decision to refuse to approve Burkholder's application. In so ruling, the Secretary noted that, pursuant to Section 211(a)(3) and (4) of the Law, 3 P.S. § 459–211(a)(3) and (4), he has the power to revoke or refuse to issue a kennel license for any one or more of the following reasons: "the person holding or applying for a license has failed to comply with this act [or] the person holding or applying for a license has failed to comply with any regulation promulgated under this act." In the present case, the Secretary set forth the following specific reasons in support of the refusal:

> Over a number of months, the photographic evidence revealed metal strand flooring which was not coated with vinyl and not kept in good repair. Jagged metal edges posed a danger to the dogs. Further, the size of the mesh did not prevent dogs' feet from passing through the openings. It took the kennel many months to make the necessary corrections.

> The photographs of this dirty, cobweb ridden, fly-infested and debris-strewn kennel are prima facie evidence of a violation of 7 Pa.Code § 21.29(c), which requires that "[t]he buildings and grounds of kennels shall be maintained, kept clean and in good repair to protect the animal from injury and to facilitate practices required by [the regulations]. Kennels shall have an effective program that controls ingress by insects . . . ."

Secretary's Adjudication at 26.

In addition, the Secretary opined that the parties' stipulation regarding Burkholder's pleas of guilty would have constituted sufficient grounds for the license refusal. He noted, however, that there were additional grounds such as the overwhelming evidence of Burkholder's failure to comply over a number of months with the regulations concerning maintenance. In that regard, the Secretary determined that the Bureau properly assessed and evaluated the six factors to be taken into consideration in determining whether to revoke or to refuse a kennel license: the gravity of the violations, the number of current or past violations, the potential effect of the violation on the health or welfare of the dogs, whether the kennel has been warned previously to correct the violation, whether the violation resulted in a criminal conviction and the length of time that has elapsed between the violations. Section 211(a.1)(1)-(6) of the Law, 3 P.S. § 459–211(a.1)(1)–(6).

Moreover, the Secretary rejected Burkholder's contention that, due to the lack of any written standard, he had no notice as to the difference between a dog warden issuing him a warning as opposed to a citation. In that regard, the Secretary noted:

> Whether Burkholder received a warning or a citation, he was unquestionably on notice that he was not in compliance with the regulations. The Secretary firmly believes that it is the responsibility of the kennel owner/operator to understand the standards for maintaining a proper kennel and to comply with those standards. As such, a kennel operator/owner should not need a dog warden to make him aware of the significance of violation of regulations.

Secretary's Adjudication at 27.

In addition, the Secretary concluded that dog wardens had the discretion either to warn or to cite. He noted that such discretion was appropriate for those individuals who were on location, could take in the entire scene and weigh all of the circumstances. In that regard, he observed:

There is no statutory requirement that the Bureau have "written standards" regarding the wardens' determinations and Burkholder has presented no case law to support this contention. In addition, the fact that there is no "magic formula" to determine when a license will be refused does not persuade the Secretary that discretion was abused. The statutory provisions are sufficiently clear and spell out meaningful factors to be considered in the decision-making process.

Secretary's Adjudication at 27. Burkholder's appeal to this Court followed.

■ Before this Court, Burkholder argues that "3 P.S. § 459–903 is void for vagueness for failure to provide sufficient definiteness so as not to encourage arbitrary and discriminatory enforcement." Petitioner's Brief at p. 3. He maintains that under Section 903, civil or criminal penalties must be preceded by a notice of violation (NOV) and a reasonable time for the kennel owner to correct the violations. He contends that the Bureau engaged in a pattern of failure to provide notice and time to come into compliance and that, "[t]he practice of finding new violations upon each subsequent inspection . . . created a situation whereby Petitioner could

not readily come into compliance. Had Petitioner been notified of all violations in the first inspection he would have had a better chance to come in compliance on an earlier date." Brief at p. 10. Thus, he argues that the Bureau acted arbitrarily and that the Secretary abused his discretion in denying his license renewal.

However, as the Bureau points out, its refusal to approve the kennel license application was an *administrative* action under Section 211 and it chose not to pursue either civil or criminal penalties under Section 903. It further notes that the pursuit of penalties for violations found during kennel inspections is not a prerequisite for a refusal to approve a license application under Section 211. Therefore, the argument that Section 903 is void for vagueness is entirely irrelevant in this case.[3]

■ Additionally, we note that the General Assembly afforded the Secretary broad discretion in administrative licensing under Section 211, the provision upon which Burkholder's license renewal was denied. Section 211(a) provides that "the Secretary may revoke or refuse to issue a kennel license . . . for any one or more of the following reasons[,]" including, *inter alia*, conviction of a violation of the Dog

---

**3.** Were we to reach this issue, we would not find Section 903(a)(1) to be facially void. Under the void-for-vagueness doctrine, a statute must define unlawful conduct with sufficient definiteness to enable an ordinary person to understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Commonwealth v. Hendrickson*, 555 Pa. 277, 724 A.2d 315 (1999). Burkholder argues that Section 903 is void for vagueness because it does not contain definite time periods in which to attempt correction of violations or provide written standards to guide dog wardens in determining whether to issue a warning or a citation. With regard to time periods, Section 903(a)(1) of the Law provides as follows:

(a) Civil penalty.—
   (1) Where the department finds that the first violation of a provision of this act or a rule or violation adopted under this act by a kennel owner or operator has occurred, it will, for violations found during that inspection, issue a Notice of Violation (NOV) to the kennel owner or operator in lieu of assessing a civil penalty. Where the kennel owner or operator takes action *in the time period provided in the NOV* to correct the violation set forth in the NOV and come into compliance, no civil penalty shall be issued for a violation which is corrected. *The time period to come into compliance shall be based on the time reasonably necessary to correct the violation.*
3 P.S. § 459.903(a)(1) (emphasis added).

Law and failure to comply with any regulation promulgated under the Law. 3 P.S. § 459–211(a). In the present case, those reasons were undeniably established by Burkholder's pleas of guilty.

Although Burkholder does not challenge the validity of Section 211, we note that Section 211 plainly puts a kennel licensee on notice that the Secretary may revoke or refuse to renew a kennel license where there have been violations of the Law and regulations. Further, the provisions and regulations of the Law that Burkholder violated, such as the failure to keep buildings and grounds of kennels adequately safe and clean to prevent injury and illness, were sufficiently definite to enable an ordinary person, especially one who had maintained a kennel license over a period of years, to understand what was prohibited.

Moreover, regardless of the Bureau's alleged practice of issuing Burkholder warnings in past inspections but ultimately granting his license renewal applications, we agree with the Secretary that there is nothing in the present case to indicate that the Secretary's action was either arbitrary or discriminatory. The violations of which Burkholder was convicted were not mere technical provisions, but disregard of fundamental health and safety needs of helpless animals.

Finally, referencing pertinent case law, the Secretary emphasized this Court's review standard in matters where an agency has broad discretion:

When reviewing the discretionary acts of an agency, [the Commonwealth Court] will overturn the agency's action only where the agency acts in bad faith, fraudulently, capriciously or has committed an abuse of discretion.... Where an agency has been vested with broad discretionary power, ... [the Commonwealth Court] will only find that the [agency] made an arbitrary, capricious or unreasonable determination in the absence of substantial evidence to support that determination.

*Kobylski v. Milk Mktg. Bd.*, 155 Pa. Cmwlth. 143, 146, 624 A.2d 770, 772 (1993). Here, the substantial evidence in support of the decision to refuse to approve Burkholder's kennel license consists of the testimony of the inspectors, the photographic evidence and the parties' stipulation as to Burkholder's guilty pleas in common pleas court to four violations of the Law and its regulations.

Accordingly, we affirm the Secretary's order affirming the Bureau's decision to refuse to approve Burkholder's 2009 kennel license application.

### *ORDER*

AND NOW, this 8th day of February, 2010, the order of the Secretary of the Department of Agriculture in the above-captioned matter is hereby AFFIRMED. The Bureau of Dog Law Enforcement's application for summary relief is DISMISSED as moot.